IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-01187-RBJ

ALMA RUBI CHAVEZ-TORRES,

    Plaintiff,

v.

THE CITY OF GREELEY and
ERIN GOOCH,

    Defendants.

---

### ORDER

---

Before the Court is Defendants' Joint Motion to Dismiss Pursuant to Rule 12(b)(6) [ECF No. 31].[1] For the reasons laid out below, the motion is granted in part and denied in part.

**I. Facts.**

The present dispute originated when an unknown woman presented a driver's license belonging to the plaintiff and attempted to cash a fraudulent check at the Guaranty Bank and Trust in Greeley, Colorado on February 8, 2012. *See* ECF No. 28 at ¶ 5. The woman hastily left the bank after an employee began to investigate whether the check was legitimate. *Id.* at ¶ 7. The next day, Officer Erin Gooch of the Greeley Police Department began investigating the crime, went to the plaintiff's residence, and arrested her in front of her three children despite the

---

[1] The defendants point out that the plaintiff's response does not comply with this Court's page limit. While it appears that the larger font used in the response explains its length, the plaintiff is reminded to consult this Court's practice standards before making future filings. Separately, the plaintiff argues that defendants' motion is untimely. It is not. *See* ECF Nos. 29, 30; Fed. R. Civ. P. 12.

plaintiff's strongly denying that she was the person who attempted to cash the fraudulent check. *Id.* at ¶¶ 8, 11, 12. The plaintiff was charged with forgery and possession of a forged instrument in Weld County District Court. *Id.* at ¶ 16. At a hearing on the day after her arrest, February 10, 2012, the judge found probable cause for the arrest. ECF No. 31-1.[2] The plaintiff remained in jail until March 28, 2012, when the case was dismissed by the prosecution "due to [its] inability to meet its burden of proof in a criminal case since the Plaintiff had not committed a crime." *See* ECF No. 28 at ¶¶ 17, 18.

According to the plaintiff, Officer Gooch failed to properly investigate the crime for which the plaintiff was arrested. Specifically, there were significant physical differences between the perpetrator, as described by bank employees, and the plaintiff. *See id.* at ¶¶ 8, 9. Additionally, a security camera that captured the incident showed that the perpetrator was "small" and had tattoos on her neck and hand, while the plaintiff "is not small and has no such tattoos." *Id.* at ¶ 10. Despite these discrepancies, and the plaintiff's "adamant denial of involvement," Officer Gooch did not obtain a still photograph from the video to compare with the plaintiff. *Id.* at ¶ 13. Nor did the officer arrange a line-up in front of bank employees, or take any further measures to ensure that she had arrested the correct person. *Id.* at ¶¶ 13, 14.

Moreover, such failures were driven by the policies and practices of the Greeley Police Department. *Id.* at ¶ 19. The department did not properly train and supervise officers, create a special unit trained to investigate allegations of forgery, or require "follow-up by officers . . . after an arrest was made." *Id.* at ¶ 19, Subparts A–D. It also failed to establish a policy of referring cases to the district attorney's office instead of making an arrest. *Id.* at ¶ 19, Subpart E.

---

[2] The Court takes judicial notice of these facts. *See Binford v. United States*, 436 F.3d 1252, 1256 n.7 (10th Cir. 2006) (courts may take judicial notice of facts that are a matter of public record).

Most relevant here, the police department failed to utilize routine investigative practices, such as still photographs, line-ups, handwriting analysis, and polygraphs, and it created "a culture . . . that stressed clearing a case and making an arrest rather than charging the correct person." *Id.* at ¶ 19, Subparts G, H.

On the plaintiff's theory, because Officer Gooch had not properly investigated the case, she and the police department "failed to provide full and complete information" to the judge presiding at the plaintiff's February 10, 2012 hearing. *Id.* at ¶ 16. Because the judge did not have "all the correct facts," he made a "flawed finding of probable cause," which resulted in the plaintiff's continued confinement. *Id.* at ¶¶ 16, 21.

Plaintiff filed claims for (1) civil rights violations under the Fourteenth Amendment, the Colorado Constitution, and 42 U.S.C. § 1983; (2) false arrest/false imprisonment; and (3) negligence.[3] Defendants now move to dismiss all claims.

**II. Discussion.**

In reviewing a motion to dismiss, the Court must accept the well-pleaded allegations of the complaint as true and construe them in the plaintiff's favor. However, the facts alleged must be enough to state a claim for relief that is plausible, not merely speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations that are purely conclusory are not entitled to an assumption of truth. *Id.* at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the

---

[3] The suit was filed in state court and removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. Federal jurisdiction is asserted based upon 28 U.S.C. §§ 1331 and 1343.

threshold pleading standard.  *See Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

### A.  § 1983

The Court first must sort out the precise legal bases underlying the plaintiff's first claim for relief.  The claim, titled "Violation of Civil Rights of Plaintiff," asserts that the defendants "failed to properly investigate the allegations . . . resulting in [the plaintiff's] illegal arrest and detention and unfounded criminal charges being filed against her . . . In addition, the Defendants failed to fully and accurately present all relevant facts to the presiding judge which resulted in a flawed finding of probable cause by the court."  ECF No. 28 at ¶ 21.  The complaint frames the claim as a violation of the Fourteenth Amendment, Article II, Section 25 of the Colorado Constitution,[4] and § 1983 based on the plaintiff's right "not to be deprived of her liberty and property without due process of law."  *Id.* at ¶ 22.  However, both the motion to dismiss and the plaintiff's response recognize that, based on the facts alleged in the complaint, the § 1983 claim may also be grounded in the Fourth Amendment.  The Court therefore considers both the Fourth and Fourteenth Amendments in analyzing the plaintiff's § 1983 claim.[5]

In considering § 1983 claims, courts look to the common law of torts for guidance. "Section 1983 provides a federal civil cause of action against state officials for the deprivation of any rights, privileges, or immunities secured by the Constitution.  Claims under § 1983 are often analytically similar to—although still distinct from—common law torts."  *Becker v. Kroll*, 494

---

[4] Neither party has addressed the claim under the Colorado Constitution, and thus the Court takes no position on the viability of such a claim.

[5] The plaintiff is given leave to amend her complaint to plead a Fourth Amendment violation.  However, because both parties have presented arguments regarding a Fourth Amendment § 1983 claim, the Court thinks it appropriate to address those arguments at this time.

F.3d 904, 913 (10th Cir. 2007) (quotations omitted). Since *Carey v. Piphus*, 435 U.S. 247 (1978), "courts have used the common law of torts as a 'starting point' for determining the contours of claims of constitutional violations under § 1983. In other words, the common law tort—while not entirely imported into § 1983—provides a useful guidepost in making sense of alleged constitutional injuries." *Id.* at 913–14 (internal citation and quotations omitted). In the present case, the parties appear to agree that both false arrest/false imprisonment and malicious prosecution may serve as a starting point in analyzing the plaintiff's § 1983 claim. *See* ECF No. 31 at 5–8, 9–12; ECF No. 34 at 8–17. The Court therefore takes the § 1983 claim to assert both types of claims.[6]

In sum, the Court construes the complaint to assert (1) a false arrest/false imprisonment claim under both the Fourth and Fourteenth Amendments and (2) a malicious prosecution claim under both amendments.[7] *Cf. Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013) (institution of legal process marks boundary between false arrest/false imprisonment and malicious prosecution claims), *as amended on denial of reh'g* (Jan. 8, 2014), *cert. denied*, 134 S. Ct. 2842 (2014). The Court will consider each in turn.

---

[6] Indeed, the Tenth Circuit has held that a plaintiff need not use specific language describing the tort analogous to a § 1983 claim in her complaint when the facts pled support the claim. *See Mondragon v. Thompson*, 519 F.3d 1078, 1084 (10th Cir. 2008) ("The complaint does not explicitly plead a claim of malicious prosecution, though it pleads facts that could support such a claim. However, . . . it is not essential that the plaintiff use the words 'malicious prosecution' to describe his due process claim.").

[7] The Tenth Circuit has recognized both claims under both amendments. *See, e.g.*, *Myers v. Koopman*, 738 F.3d 1190, 1194 (10th Cir. 2013) (recognizing false arrest/false imprisonment and malicious prosecution claims under the Fourth Amendment), *as amended on denial of reh'g* (Jan. 8, 2014), *cert. denied*, 134 S. Ct. 2842 (2014); *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (recognizing Fourth Amendment false arrest/false imprisonment claim and Fourteenth Amendment malicious prosecution claim); *Romero v. Fay*, 45 F.3d 1472, 1480 (10th Cir. 1995) (recognizing Fourth Amendment false arrest/false imprisonment claim); *Meadows v. Whetsel*, 227 F. App'x 769, 771 (10th Cir. 2007) (recognizing both claims under both amendments).

### 1. <u>False Arrest/False Imprisonment</u>

Defendants argue that to the extent plaintiff's § 1983 claim is a false arrest/false imprisonment claim, it is time-barred. "[T]he limitation period for an action under 42 U.S.C. § 1983 . . . is set by the personal injury statute in the state where the cause of action accrues." *Roberts v. Barreras*, 484 F.3d 1236, 1238 (10th Cir. 2007). In Colorado, the applicable statute of limitations is two years. *See Myers*, 738 F.3d at 1194 (citing C.R.S. § 13-80-102(1)(a)). However, "[f]ederal law determines the date on which the claim accrues and, therefore, when the limitations period starts to run." *Id.* Under federal law, "[a] claim of false imprisonment accrues when the alleged false imprisonment ends." *Id.* "The false imprisonment ends . . . when the victim is released or when the victim's imprisonment becomes pursuant to legal process—when, for example, he is bound over by a magistrate or arraigned on charges." *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (internal citations, quotations, and alterations omitted).

In the present case, the plaintiff argues that her false arrest/false imprisonment claim did not accrue until March 28, 2012, when she was released from custody. ECF No. 34 at 9. Because the case was filed on March 27, 2014, this accrual date would put the plaintiff's filing just within the two-year period. However, an instance of false imprisonment ends when a victim is held pursuant to legal process. *See Mondragon*, 519 F.3d at 1082. Here, as the government points out, the plaintiff's initial appearance before a judge took place on February 10, 2012, at which time the judge determined that probable cause existed for her arrest. *See* ECF No. 31, Ex. A. Thus the plaintiff was held pursuant to legal process from that date forward, and her claim for false arrest/false imprisonment accrued then. Because she did not file suit for more than two

years after February 10, 2012, this claim is time-barred.

The plaintiff argues that she was not held pursuant to legal process from February 10, 2012 to March 28, 2012 because (1) "the review by the Court on February 10, 2012 [was] so limited that it cannot establish the accrual date" and (2) "the affidavit that served as the basis for the probable cause determination was fatally flawed." ECF No. 34 at 9. Neither point is persuasive. The fact that the plaintiff may have been imprisoned pursuant to wrongful legal process does not change the above analysis. *See Mondragon*, 519 F.3d at 1082 (imprisonment pursuant to legal but wrongful process gives rise to malicious prosecution claim, not false arrest/false imprisonment claim). Moreover, the Tenth Circuit has held that the statute of limitations for a false arrest/false imprisonment claim begins to run when a hearing of the type the plaintiff had on February 10, 2012 takes place. *See Young v. Davis*, 554 F.3d 1254, 1257 (10th Cir. 2009). Lastly, the fact that the affidavit may have been flawed does not change the fact that the plaintiff was held pursuant to legal process; indeed, the plaintiff does not cite a single case suggesting that it does. *See* ECF No. 34 at 12–16.

For the reasons laid out above, insofar as plaintiff's § 1983 claim is grounded in the tort of false arrest/false imprisonment, the claim is time-barred. The Court thus dismisses it with prejudice. *See Wolters v. Smith*, 168 F. App'x 863, 864 (10th Cir. 2006) (affirming dismissal with prejudice where claims were time-barred).

**2. Malicious Prosecution**

Turning to the plaintiff's § 1983 claim based on malicious prosecution, the defendants argue that the complaint fails to state a claim under both the Fourth and Fourteenth Amendments. The Court will analyze the parties' positions concerning each amendment in turn, then address

their arguments on qualified immunity and municipal liability.

### a. The Fourth Amendment

Beginning with the Fourth Amendment, defendants argue that plaintiff has failed to plead the required elements of a malicious prosecution claim. Under Tenth Circuit precedent, "a § 1983 malicious prosecution claim includes the following elements: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008). *See also Novitsky v. City Of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007) (addressing claim under both the Fourth and Fourteenth Amendments). Defendants' motion argues that the allegations in the complaint fail to establish the third and fourth elements.

Considering first the third element, defendants contend that plaintiff has failed to plead a lack of probable cause. The Court disagrees. The complaint asserts that

> Officer Gooch and the Greeley Police Department failed to provide full and complete information to the presiding judge who, in the absence of all the correct facts, made a determination that there was probable cause for the Plaintiff's arrest. If Officer Gooch and the Greeley Police Department had conducted a proper investigation and provided full and accurate information to the judge, the court would not have proceeded with the criminal case against an innocent Defendant.

ECF No. 28 at ¶ 16. Furthermore, the complaint alleges, the judge's finding of probable cause was "flawed." *Id.* at ¶ 21. Although these allegations do not explicitly plead a lack of probable cause, they undoubtedly imply that no probable cause existed for plaintiff's arrest. On plaintiff's theory, had defendants conducted a proper investigation and provided more accurate information to the presiding judge, the judge would not have found probable cause for the arrest. *See id.*

8

Because the Court must draw all reasonable inferences in favor of the plaintiff in ruling on a motion to dismiss, the Court finds that the plaintiff has alleged enough to satisfy the third element of a malicious prosecution claim.

Turning to the fourth element, defendants argue that plaintiff has also failed to plead any facts from which one could reasonably infer malice on the part of Officer Gooch. In the context of a malicious prosecution claim, "[m]alice is shown if the primary motive of the defendant was a motive other than a motive to bring to justice a person thought to have committed a crime." *Barton v. City & Cnty. of Denver*, 432 F. Supp. 2d 1178, 1194 (D. Colo. 2006) (internal citation omitted) *aff'd*, No. 06-1536, 2007 WL 3104909 (10th Cir. Oct. 24, 2007). Furthermore, "[m]alice may be inferred from a lack of probable cause." *Sancetta v. Apollo Stereo Music Co.*, 44 Colo. App. 292, 294 (1980). Because the Court is satisfied that plaintiff's allegations are sufficient to find a lack of probable cause, the plaintiff has pled sufficient facts to plausibly find that Officer Gooch was motivated by malice. *See id.* Moreover, the complaint also alleges that the Greeley Police Department created "a culture . . . that stressed clearing a case and making an arrest rather than charging the correct person," and that this culture "caused and created the harm done to the Plaintiff." ECF No. 28 at ¶ 19, subpart H. This allegation, together with Officer Gooch's failure to take obvious steps to ensure that she identified the correct perpetrator, *see* ECF No. 28 at ¶¶ 13, 14, invites the inference that Officer Gooch was motivated primarily by a desire to finish her investigation quickly, not a desire to bring the perpetrator to justice. Thus the Court is satisfied that the complaint sets out sufficient facts to support a finding of malice.

For these reasons, the Court finds that the plaintiff has put forth sufficient allegations to plausibly state a claim for malicious prosecution under the Fourth Amendment and therefore declines to dismiss the claim on this basis.

### b. The Fourteenth Amendment

Turning to the Fourteenth Amendment, defendants argue that plaintiff's claim is barred under the Tenth Circuit's holding in *Myers*, 738 F.3d 1190. In *Myers*, the court held that

> [t]he district court rightly rejected [plaintiff's] Fourteenth Amendment malicious-prosecution claim under 42 U.S.C. § 1983 because Colorado law provides an adequate remedy. . . . If a state actor's harmful conduct is unauthorized and thus could not be anticipated pre-deprivation, then an adequate post-deprivation remedy—such as a state tort claim—will satisfy due process requirements. Here, [plaintiff] alleges that [defendant] conjured up facts to create the illusion of probable cause for an arrest warrant and subsequent prosecution. Such lawlessness could not have been anticipated or prevented pre-deprivation, but a post-deprivation malicious-prosecution claim serves as an effective antidote. Colorado law provides that remedy. The existence of the state remedy flattens the Fourteenth Amendment peg on which [plaintiff] now tries to hang his § 1983 malicious-prosecution claim.

*Id.* at 1193 (citing *Parratt v. Taylor*, 451 U.S. 527, 535–44 (1981)) (internal citations omitted). On defendants' theory, the same reasoning applies in the present case, and plaintiff's Fourteenth Amendment malicious prosecution claim should be dismissed.

However, as *Myers* makes clear, a post-deprivation tort remedy satisfies due process only when the state actor's conduct could not have been anticipated pre-deprivation. *See id.* The analysis from *Myers* quoted above relies on the Supreme Court's holding in *Parratt v. Taylor*; however, another line of cases under *Zinermon v. Burch*, 494 U.S. 113 (1990), clarifies that "an adequate post-deprivation remedy is a defense to a § 1983 due process claim only where the deprivation is unpredictable, or random and unauthorized." *Urban v. Tularosa*, 161 F.3d 19 (10th Cir. 1998). Indeed, as the Second Circuit has explained, "[i]f the conduct of the [defendant

government official] . . . was pursuant to town policy, *Parratt* and its progeny, which apply only to random, unauthorized conduct, are simply inapposite." *Sullivan v. Town of Salem*, 805 F.2d 81, 86 (2d Cir. 1986). Thus, if it would not be not impracticable or impossible to establish a pre-deprivation process to correct the alleged wrongdoing, a defendant in a § 1983 case cannot rely on *Parratt* to defeat a claim grounded in the Fourteenth Amendment. *See id.*

In the present case, the plaintiff alleges not that Officer Gooch's conduct was random and unauthorized, but rather that she acted pursuant to department policies that did not require officers to utilize routine investigative procedures and encouraged officers to quickly clear cases, emphasizing speed over accuracy. *See* ECF No. 28 at ¶¶ 13; 14; 19, Subparts G, H. In a similar case involving a town policy encouraging officers to issue tickets to raise revenue, the Southern District of New York held that *Parratt* was inapplicable:

> Here, the plaintiffs allege that their vehicles were ticketed without basis as a result of pressure by high City officials to issue tickets to raise revenue. This allegation certainly would permit plaintiffs to prove, if prove they can, that some or all of the defendants instructed enforcement personnel to issue baseless tickets or knowingly acquiesced in that practice, either of which would satisfy *Zinermon*. As the complaint may not be dismissed unless it is clear that plaintiffs can prove no facts that would entitle them to relief, the Court cannot conclude at this stage that *Parratt* would require dismissal.

*C.A.U.T.I.O.N., Ltd. v. City of New York*, 898 F. Supp. 1065, 1071 (S.D.N.Y. 1995). Similarly here, if the plaintiff was in fact wrongly arrested because Officer Gooch was acting pursuant to a policy encouraging fast investigative work at the price of accuracy, the defendants cannot rely on the availability of a post-deprivation remedy to defeat plaintiff's due process claim. For this reason, the Court will not dismiss the Fourteenth Amendment malicious prosecution claim under the reasoning laid out in *Myers*.

### c. **Qualified Immunity**

Having declined to dismiss the plaintiff's malicious prosecution claim under both the Fourth and Fourteenth Amendments, the Court now turns to the defendants' arguments concerning qualified immunity. "Once a defendant pleads qualified immunity, the plaintiff initially bears a heavy two-part burden. First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. Second, the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995) (internal citations omitted).

To satisfy the second part of this burden, a plaintiff must show that "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 1535. Although the specific action at issue does not have to have previously been held unlawful, "in the light of pre-existing law the unlawfulness must be apparent. Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.*

First, "to establish a constitutional violation Plaintiffs must assert facts meeting the elements of a § 1983 malicious prosecution claim." *Wilkins*, 528 F.3d at 797. As noted above, the elements of such a claim are: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with

malice; and (5) the plaintiff sustained damages." *Id.* at 799. *See also Novitsky*, 491 F.3d at 1258 (addressing claim under both the Fourth and Fourteenth Amendments); *McCarty v. Gilchrist*, 646 F.3d 1281, 1286 (10th Cir. 2011) (no distinction exists between elements required under Fourth and Fourteenth Amendment claims). The Court has already concluded that plaintiff has pled sufficient facts to satisfy the third and fourth elements. Moreover, it is apparent from the complaint that Officer Gooch caused the plaintiff's confinement ("Officer Gooch arrested the Plaintiff . . . and booked her into the Weld County jail," ECF No. 28 at ¶ 12), the action terminated in the plaintiff's favor ("The case was dismissed by the prosecution . . . due to the prosecution's inability to meet its burden of proof in a criminal case since the Plaintiff had not committed a crime," *id.* at ¶ 17),[8] and the plaintiff sustained damages (*see id.* at 7–8 (describing damages)). Thus the plaintiff has satisfied the first part of her burden in demonstrating that Officer Gooch is not entitled to qualified immunity.[9]

Turning to the second step, the Court is satisfied that the plaintiff's right to be free from the conduct alleged in the complaint is clearly established under the Fourth and Fourteenth Amendments. To meet her burden at this step of the qualified immunity analysis, the plaintiff "need not cite a factually identical case to demonstrate the law was clearly established. Some

---

[8] Under the relevant Restatement provision, "[t]he abandonment of the proceedings because the accuser believes that the accused is innocent or that a conviction has, in the natural course of events, become impossible or improbable, is a sufficient termination in favor the accused." Restatement (Second) of Torts § 660, Comments on Clause (b).

[9] It is unclear whether the Tenth Circuit requires that something more than facts satisfying the common law elements of the claim be pled to state a constitutional violation. *See, e.g.*, *Novitsky*, 491 F.3d at 1257 (Although "the common law elements of malicious prosecution [serve] as the starting point of [the] analysis[,] the ultimate question is whether plaintiff has proven the deprivation of a constitutional right."). However, the circuit itself has based the first step of the qualified immunity analysis on the common law elements of malicious prosecution, *see Wilkins*, 528 F.3d at 804, and thus the Court follows the same approach here.

level of generality is appropriate." *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1258 (10th Cir. 1998). Indeed, courts have often framed the right at issue here as the right to be free from malicious prosecution. *See, e.g.*, *Abudiab v. Georgopoulos*, 586 F. App'x 685, 686 (9th Cir. 2013) ("[T]he right to be free from malicious prosecution by a government official was clearly established at the time of [defendant's] alleged misconduct."); *Bonide Products, Inc. v. Cahill*, 223 F.3d 141, 145 (2d Cir. 2000) ("[T]he right to be free from malicious prosecution is a clearly established right."); *Spurlock v. Satterfield*, 167 F.3d 995, 1006 (6th Cir. 1999) ("This court . . . found that the right to be free from malicious prosecution was a right clearly established."); *Osborne v. Rose*, 133 F.3d 916 (4th Cir. 1998) ("[A] constitutional right to be free from malicious prosecution was not clearly established in November 1994."); *Goldey v. Com. of Pa.*, No. CIV. A. 92-6932, 1994 WL 396471, at *3 (E.D. Pa. June 20, 1994) ("[T]he Court holds that [plaintiff's] constitutional right to be free from malicious prosecution was clearly established on the date of the incident.").

Such a right is clearly established under Tenth Circuit case law. The circuit has long recognized that a claim of malicious prosecution can amount to a constitutional violation under § 1983.[10] *See Taylor v. Meacham*, 82 F.3d 1556, 1560 (10th Cir. 1996) ("Our court has recognized the viability of malicious prosecution claims under § 1983."). *See also Wilkins*, 528 F.3d at 805; *Novitsky*, 491 F.3d at 1257; *Garcia v. Johnson*, 64 F.3d 669 (10th Cir. 1995)

---

[10] Moreover, the circuit has recognized that the violation arises under both the Fourth and Fourteenth Amendments. *See Miller v. Spiers*, 339 F. App'x 862, 867 (10th Cir. 2009) ("[W]e see this case as a single Fourth *and* Fourteenth Amendment malicious prosecution claim. *See Novitsky v. City of Aurora,* 491 F.3d 1244, 1258 (10th Cir.2007) (noting that a malicious prosecution claim can be grounded in both the Fourth and Fourteenth Amendments); *Pierce v. Gilchrist,* 359 F.3d 1279, 1285-86 (10th Cir.2004) ("The initial seizure is governed by the Fourth Amendment, but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause.")).

(finding that officers' alleged conduct violated plaintiff's clearly established constitutional rights under the Fourth and Fourteenth Amendments). Indeed, the absence of probable cause—as the plaintiff has alleged in the present case—is "what gives a § 1983 malicious prosecution claim its constitutional character." *Sperry v. Maes*, 592 F. App'x 688, 694 (10th Cir. 2014). Because several Tenth Circuit cases have made clear that an instance of malicious prosecution undertaken without probable cause constitutes a constitutional violation, the Court concludes that the right to be free from malicious prosecution is clearly established under Tenth Circuit law. Thus, under the allegations in the complaint, Officer Gooch is not entitled to qualified immunity.[11]

### d. Municipal Liability

Defendant's motion also argues that the plaintiff has failed to state a federal cause of action against the City of Greeley because the complaint does not allege any practice or policy causally linked to the alleged constitutional violations. However, the Court is satisfied that the allegations in the complaint are sufficient to plausibly state a claim. The plaintiff alleges that, among other failings, the Greeley Police Department had a policy of not utilizing routine investigative practices such as still photographs, line-ups, handwriting analysis, and polygraphs. ECF No. 28 at ¶ 19, Subpart G. Indeed, over a page of the complaint is spent outlining the alleged "unconstitutional policies and customs of the City of Greeley [that] were the moving force in the injuries and damages to the Plaintiff." *Id.* at ¶ 19. These allegations are not merely conclusory, as defendant argues; rather, they describe with some specificity how the

---

[11] Furthermore, the Tenth Circuit has held that a constitutional right is clearly established when "an official in [defendant's] position could not have labored under any misapprehension that [her conduct] was objectively reasonable" and "[the] alleged misconduct did not stem from a miscalculation of [the defendant's] constitutional duties, nor was it undertaken in furtherance of legitimate public purposes that went awry." *Pierce v. Gilchrist*, 359 F.3d 1279, 1299–300 (10th Cir. 2004). If Officer Gooch did indeed rush through the investigation because she was more concerned with completing it than she was with arresting the correct person, a fact issue, such behavior was not objectively reasonable, nor was it undertaken in furtherance of a legitimate public purpose gone awry.

department's policies resulted in Officer Gooch's poor investigation. *See id.* The Court therefore declines to dismiss the § 1983 claim against the City of Greeley on this basis.

In sum, the Court finds that to the extent the § 1983 claim is based on the tort of false arrest/false imprisonment, it is time-barred and must be dismissed with prejudice. However, the plaintiff has pled a viable malicious prosecution § 1983 claim under both the Fourth and Fourteenth Amendments. Furthermore, the Court does not find at this stage that Defendant Gooch is entitled to qualified immunity, nor does the Court find it appropriate to dismiss the claim against the City of Greeley. Thus, to the extent plaintiff's § 1983 claim is grounded in a theory of malicious prosecution, it survives the present motion to dismiss.

### B. False Arrest/False Imprisonment

Turning to plaintiff's second claim, defendants argue that the false arrest/false imprisonment claim is barred by the statute of limitations.[12] Under Colorado law, the statute of limitations for such a claim is two years. C.R.S. § 13-80-102(1)(a). Because plaintiff filed the present action on March 27, 2014, the claim is time-barred if it accrued before March 27, 2012. Although there does not appear to be an on-point Colorado case discussing when a false arrest/false imprisonment claim accrues, courts relying on common-law principles have consistently held that the claim accrues when the victim is released or becomes held pursuant to legal process. *See, e.g.*, *Wallace v. Kato*, 549 U.S. 384, 389, 127 S. Ct. 1091, 1096, 166 L. Ed. 2d 973 (2007) ("Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process.");

---

[12] Although defendants' motion acknowledges that this claim sounds in state law, it discusses the statute of limitations issue only in the context of § 1983. *See* ECF No. 331 at 5–7. However, as pled, plaintiff's second claim is a state law tort claim, implicitly in federal court pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction), and the Court analyzes it as such.

*Johnson v. Blackwell*, 885 N.E.2d 25, 31 (Ind. Ct. App. 2008) (citing "common law principles relied upon in *Wallace*" in determining when false arrest/false imprisonment claim accrued under state law); *Dunn v. Felty*, 226 S.W.3d 68, 72 (Ky. 2007) ("[W]e conclude that [the plaintiff's false imprisonment ended when he became held pursuant to legal process."). As discussed above, the plaintiff became held pursuant to legal process on February 10, 2012. For this reason, her state law false arrest/false imprisonment claim is time-barred, and the Court dismisses it with prejudice.

### C. Negligence

Lastly, defendants argue that plaintiff has failed to state a claim for negligence and, in any event, any claim she may have stated is time-barred. The Court agrees that to the extent plaintiff has alleged a plausible negligence claim, it is barred by the statute of limitations. "According to Colorado law, the elements of a negligence claim are that (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's injury." *Ayala v. United States*, 49 F.3d 607, 611 (10th Cir. 1995) (citing *Casebolt v. Cowan*, 829 P.2d 352, 356 (Colo.1992)). The complaint appears to lay out two plausible theories of negligence. First, the plaintiff alleges that "Officer Gooch had a clear duty to further investigate whether the Plaintiff was the female perpetrator of the crime," and that she breached that duty by conducting a significantly flawed investigation, which led to the plaintiff's wrongful imprisonment. ECF No. 28 at ¶¶ 12–14. Second, the complaint asserts that the Greeley Police Department was negligent in failing to furnish a copy of the security camera footage to the district attorney's office and the plaintiff's attorney within a reasonable amount of time, unnecessarily extending the plaintiff's stay in jail. *Id.* at ¶ 15. But, under either theory, the

claim is time-barred.

In Colorado, negligence claims are subject to a two-year statute of limitations, which begins running "on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." C.R.S. § 13-80-102(1)(a); C.R.S. § 13-80-108(1). On the plaintiff's first theory, one must remember that she claims factual innocence, that is, that she was not the person who presented the bogus check in the bank. Thus, she necessarily was aware when she was arrested and jailed that the investigation that led to those events was flawed. Because she was arrested on February 9, 2012 but did not file suit until March 27, 2014, any negligence claim based on Officer Gooch's investigation is time-barred.

As for the second theory, plaintiff alleges that "[t]here was a prolonged delay by the [police department] in furnishing a copy of the videotape to the Weld County District Attorney's Office and counsel for the plaintiff," and that this delay unnecessarily extended the plaintiff's stay in jail. ECF No. 28 at ¶ 15. Beginning with the delay in getting the tape to the plaintiff's attorney, the Court infers from this allegation that (1) the plaintiff had an attorney at the time she was in jail and (2) the attorney requested the tape during this time. Since the alleged delay could not have plausibly lasted only a single day, the plaintiff and her attorney must have known about the delay before March 27, 2012. Moreover, because the plaintiff claims she was innocent, she must have known that the tape would show someone else attempting to cash the fraudulent check, and thus that once her attorney had the tape, he would be able to secure her release from jail. For these reasons, the complaint clearly implies that the plaintiff knew that her stay in jail had been unnecessarily extended before March 27, 2012, and that the police department's failure to furnish the tape to her attorney had caused this injury.

Moreover, she either knew or could have discovered through reasonable diligence that the police department's failure to turn the tape over to the district attorney's office also unnecessarily prolonged her stay.  Given that her attorney had been attempting to get a copy of the tape while the plaintiff was in jail, it seems likely that he, and therefore the plaintiff, became aware of the delay in furnishing the tape to the district attorney's office.  Even if they were not actually aware of the delay, they could have discovered it through the exercise of reasonable diligence, particularly in light of the fact that the plaintiff's attorney was trying to secure the plaintiff's release from jail.  Again, because the alleged delay could not have plausibly lasted only a single day, the plaintiff must have known about it or have been able to discover it before March 27, 2012.  Since she also must have known that the tape would exonerate her by showing the real perpetrator, she must have known—or been able to discover—that the police department's delay in furnishing it to the district attorney's office caused her stay to be extended unnecessarily.  Thus, again on this theory, the plaintiff knew about or could have discovered her injury and its cause before March 27, 2012.  Therefore any negligence claim grounded in the police department's failure to furnish the security footage within a reasonable time period is also time-barred, and the Court dismisses the plaintiff's negligence claim with prejudice.[13]

### III. Conclusion and Order.

For the reasons laid out above, defendants' motion to dismiss [ECF No. 31] is GRANTED IN PART and DENIED IN PART.  Plaintiff's § 1983 claim is DISMISSED WITH PREJUDICE to the extent it is premised on a theory of false arrest/false imprisonment.  The state law false arrest/false imprisonment and negligence claims are also DISMISSED WITH

---

[13] Because the Court dismisses the claim as time-barred, I do not address defendants' final argument that plaintiff's state law claims are barred because there are no allegations of willful and wanton conduct.

PREJUDICE.  Plaintiff may proceed with the § 1983 claim to the extent it is based on a malicious prosecution theory.

DATED this 21st day of April, 2015.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge